# SECURITY CONTRACTORS AGREEMENT

Between

## KARD Protection Services dba Northwest, Dependable & Kard

And

## Service Employees International Union, Local 1

## APRIL 25, 2016 through APRIL 28, 2019

## KARD Protection Services dba Northwest, Dependable & Kard

### AND

### SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1
### April 25, 2016 through April 28, 2019

THIS AGREEMENT, entered into by **KARD Protection Services dbaNorthwest, Dependable & Kard** hereafter designated as the "Employer") and SERVICE EMPLOYEES INTERNATIONAL UNION,LOCAL 1 (hereafter designated as the "Union") covers wages, hours and working conditions for security employees who are now or may hereafter be represented by said Union (hereafter designated as "employees") and who are now or may hereafter be employed by said Employer within the jurisdiction of the Union.

If there is any conflict between the BOMA/SEIU Local 1 Security Collective Bargaining Agreement and this Agreement in BOMA Security Signatory Buildings, the parties to this Agreement agree that the BOMA/SEIU Local 1 Security Collective Bargaining Agreement shall govern and agree to be bound by the terms and conditions of the BOMA/SEIU Local 1 Security Collective Bargaining Agreement.

### ARTICLE I
### RECOGNITION

**Section 1.** The Employer recognizes the Union as the sole and exclusive representative of all non-supervisory full-time and part-time, security employees, including security employees who have no permanent assignment but regularly work a majority of their hours at sites which are covered by this agreement, and also including elevator operators, starters and assistant starters employed by them in the buildings which are now or may hereafter be covered by this Agreement, but excluding highly compensated loss prevention, detection and investigative employees and security personnel employed by building tenants or by contractors engaged by tenants. Employers and employees shall not bargain independently of the Union so as to modify wages, hours of employment or working conditions as provided in this Agreement; the right to bargain on behalf of all such employees is vested solely in the Union.

**Section 3.** The Employer agrees to deduct in the first pay period of each month, from the pay of every employee who has executed and caused to be delivered to the Employer a written assignment, the regular monthly dues and the initiation fee of the Union, if due and owing, in accordance with the Constitution and Bylaws of the Union as certified to the Employer by the Union, and any COPE contributions, if duly requested by the employee. Where the employee, who is on checkoff, has insufficient earnings during the first pay period of the month, the deductions shall be made by the Employer from the next wage payment in accordance with billings furnished by the Union.

The Employer agrees that such deductions shall constitute Trust Funds and will be forwarded by the Employer to the Union within ten (10) days after such deduction is made. With each monthly remittance, the Employer shall transmit electronically in an excel format by building the names, social security numbers, wage rates and starting dates of all employees of the Employer covered by this Agreement who performed security services in the building during the preceding month including, where known, their status as temporary or regular employees. The Union will provide to a member building, within ten (10) business days of receiving a written request by a member building, the information described in the preceding sentence. Any employer who, without a bona fide reason, intentionally fails to remit such deductions within thirty (30) days on two (2) occasions within any twelve (12) month period shall, in the event of any such subsequent failure, be required to pay in addition to the delinquent amount, interest at the rate of two percent (2%) per month thereon, and liquidated damages at the rate of five percent (5%) per month thereon, as well as all costs incurred by the Union in recovering such delinquent amounts, including attorney and auditor fees and court costs.

The Union agrees to indemnify and save the Employer harmless from any liability incurred by reason of such deductions.

**Section 4.** The Employer shall discharge an employee for non-payment of Union initiation fees or dues within ten (10) days after the Employer's receipt of written notice from the Union that such employee is not in good standing. Said notice shall state that the employee has previously been given fifteen (15) days' written notice: (a) of the delinquency, (b) of the amount and method of computation thereof, (c) that the employee is not in good standing with respect to the payment of Union initiation fees or dues, and (d) that discharge will result at the end of said fifteen (15) day period unless all arrears are paid. The Union will indemnify, defend and hold the Employer harmless against all liability, damages, claims and costs incurred by the Employer, including but not limited to court costs, judgments and attorney fees and expenses, by reason of the Employer's compliance with this Section. The Union reserves the right, at its option and at its own expense, to appear and defend all such claims whenever suit is brought against the Employer. Employee protests of discharge for alleged non-payment of Union initiation fees or dues will not be subject to the grievance procedure or arbitration.

3

## ARTICLE IV
## WAGES

### Section 1.

**(A).** Effective April 25, 2016, employees hired prior to April 30, 2013 shall receive an increase in pay of not less than forty cents ($.40) per hour or a minimum wage rate of not less than $14.15 per hour, whichever is greater.

Effective April 24, 2017, employees hired prior to April 30, 2013 shall receive an increase in pay of not less than forty cents ($.40) per hour or a minimum wage rate of not less than $14.55 per hour, whichever is greater.

Effective April 23, 2018, employees hired prior to April 30, 2013 shall receive an increase in pay of not less than forty-five cents ($.45) per hour or a minimum wage rate of not less than $15.00 per hour, whichever is greater.

**(B).** The minimum wage rate for security employee employed by the Employer on October 15, 1984 shall be as follows:

| EFFECTIVE DATE | MINIMUM WAGE RATE |
| --- | --- |
| April 25, 2016 | $16.50/hr |
| April 24, 2017 | $16.90/hr |
| April 23, 2018 | $17.35/hr |

**(C).** For those employees hired by an Employer prior to January 1, 1998 who, immediately prior to that date, were represented by Local 1, SEIU and covered by the Elevator Agreement between BOMA/Chicago and Local 25, SEIU dated April 11, 1994 (the "Elevator Agreement") shall be subject to the following:

If, immediately prior to the effective date of the April 20, 1998 – April 22, 2001 collective bargaining agreement between BOMA/Chicago and Local 1's predecessor, Local 73, General Service Employees Union, said employees were receiving shift premiums pursuant to Article IV, Section 3 of the Elevator Agreement, and if, immediately prior to the effective date of the Security Agreement they were still receiving such premiums, they shall continue to receive such premiums so long as they continue to work schedules which would have entitled them to receive such premiums under the Elevator Agreement.

5

## ARTICLE V
## WORKWEEK-OVERTIME

**Section 1.** The workweek shall consist of seven (7) consecutive days. This Section shall not be construed as a guarantee of any number of day's work per week or hour's work per day. An employee will be granted a minimum of one (1) day off in each workweek.

Work schedules for part-time security employees shall be established by the Employer in accordance with its operating needs. The Employer will make a reasonable effort to schedule full time employees to a forty (40) hour workweek.

**Section 2.** All work performed in excess of 40 hours in one workweek shall constitute overtime and shall be paid for at the rate of time and one-half the employee's hourly rate. The Employer guarantees the foregoing hours of work to those full time security employees who were employed as such by the Employer as of the effective date of this Agreement who are scheduled to work in a workweek and who are ready, willing and able to work such hours; provided, however, that employers maintaining regular workweeks for full-time security employees of less than 40 hours as of the effective date of this Agreement may continue to maintain such work weeks. The weekly guarantee provided in this section shall not apply in any workweek in which the Employer is required to close a building covered by this agreement for part or all of a scheduled workday due to an act of God or other circumstances beyond the Employer's control, including but not limited to fire, snowstorm, flood, or act of terrorism. If any security employee is required to work beyond his or her regularly scheduled hours in any day, such employee shall be paid therefore and shall not be required to take compensatory time off.

**Section 3.** Each full-time employee shall be entitled to 20 minutes of paid non-working time per day which shall be taken in two rest periods and 10 minutes paid non-working time for every four (4) hours the employee works over their normal schedule; provided, that if the Employer has previously specified relief time in excess of that provided herein, such additional relief time shall continue to be provided to security employees who were employed by the Employer as of October 15, 1984 and who were, as of that date, receiving such additional specified relief time. Employers who comply with this provision shall be deemed to have complied with and satisfied the provisions of Illinois law as set forth in 820 ILCS 140/3. Each employee required to secure a standing post shall be allowed to sit for a minimum of five (5) minutes during each hour worked.

**Section 4.** The Employer shall endeavor to give each employee an uninterrupted lunch period of twenty minutes away from the workstation no later than four-and-one-half hours after the start of the employee's shift. It shall be understood, however, that while the nature of security work may make direct relief by another

7

shall be paid for the aforesaid holidays on a pro-rata basis; that is, the percentage which such employee's hours each week represent to a 40 (forty) hour week multiplied times eight (8) hours or four (4) hours, whichever is applicable.

Regular employees required to work on holidays, including the birthday holiday, shall be paid extra for such hours worked at one and one-half times their regular hourly rate, in addition to the holiday pay.

**Section 3.** In order to qualify for holiday pay, employees must work their last regularly scheduled shifts before the holiday and their next regularly scheduled shifts following the holiday; provided, that employees who are absent on one or both of such days due to approved vacation shall be entitled to holiday pay, and provided, further, that employees who are absent on one or both of such days due to FMLA leave, medical leave, personal leave, personal holidays, funeral leave per Article IX or jury duty per Article XXI previously approved by the Employer shall be entitled to receive holiday pay only upon their return to active employment within ninety (90) calendar days following the beginning of their absence. Employees on approved vacation, personal days approved two weeks in advance, or funeral leave, which ends or begins the day before or after a holiday, are entitled to compensation pursuant to this provision.

**Section 4.** In the event that there is one date provided for under Illinois law with respect to a holiday called for in this Agreement and another date provided for by Federal law, the date established by Federal law shall be observed, provided that a building as a unit may choose to observe the Illinois date to accommodate the needs of tenants. The following holidays which fall on a Saturday or Sunday constitute an exception to Section 1, above, and shall be observed on the actual day of the holiday, rather than the day they are legally observed:

<u>2016, Sunday, December 25th</u>
<u>2017, Sunday, January 1st</u>

**Section 5.** Employees scheduled to work on a holiday who do not report for work shall not be eligible to receive holiday pay unless an emergency exists involving a death in the employees immediate family or illness of the employee with reasonable documentation. Any employee who takes an extra day off in connection with the holidays provided for in this Article for unjustified reasons shall be subject to progressive discipline by the Employer.

**Section 6.** Employees must provide the Employer with not less than two (2) calendar weeks in advance in order to receive birthday holiday pay and/or time off for that date. If employees fail to provide such advance notice, the Employer may require them to celebrate their birthday holidays on alternative dates or receive pay in lieu of their birthday holidays.

9

**Section 6.** Vacation rights of employees shall not be affected by a change of contractors, ownership or management of the building so long as they remain in the employ of the new owner(s), manager(s), or contractor(s). Any employee employed by a contractor whose employment is terminated by reason of change of contractors during the employee's first year of employment in a building and who is retained in the same building by the new contractor shall, upon completion of his or her full first year of employment in the building, be entitled to a full vacation with pay from the new contractor, less any vacation pay which may have been received by the employee from the displaced contractor.

**Section 7.** Vacations shall be scheduled at times that are mutually acceptable to the Employer and the employee, provided that the employee shall comply with reasonable policies of the Employer relating to vacation requests.

**Section 8.** Provided the employee has complied with the Employer's policies relating to vacation requests, vacation checks for only the earned and approved vacation time requested by an employee with thirty (30) days of advance notice or more shall be paid to the employee no later than the last scheduled day of work before the beginning of the employee's scheduled vacation.

**Section 9.** Each regular employee shall be credited with the normal number of hours at straight time in his or her shift on each of such vacation days and, in the case of those vacation days which fall on what would have been the employee's regular workday, such time shall be credited as time worked in computing overtime.

Employees required to work on scheduled vacation day(s) shall be paid for hours worked on such day(s) at one and one-half times their regular hourly rate in addition to vacation pay; provided, however, that the foregoing shall not apply if the Employer and employee agree to reschedule the previously scheduled vacation day(s).

## ARTICLE VIII
## TERMINATION - VACATION ACCRUAL - FINAL PAYCHECK

**Section 1.** Any employee who has been in the service of an Employer for more than one year and whose employment is terminated shall receive a pro-rated vacation upon his/her resignation or termination for any cause other than proven theft or admitted criminal acts committed while on duty, abandonment of post, or acts or omissions which lead to serious damage to client property.

This shall take into account the employee's accrued vacation, if any, and the period worked since the first or anniversary date of employment compared with the vacation to which the employee would be entitled if the employee worked the entire year.

11

When the employee resigns from an Employer (other than retirement), and the Employer has paid a Permanent Employee Registration Card (PERC) fee for the employee, a deduction shall be made from the employee's final paycheck to cover the PERC fee for the portion of the three (3) year period remaining after the employee's resignation if the employee has not already paid for it.

**Section 4.** For the purpose of preventing loss or negligent damage, the Employer may deduct an amount up to $150.00 from the wages of new employees and withhold same as a security deposit on uniforms, apparel and equipment issued by the Employer for the exclusive use of the employee, provided that the deduction is done over three (3) pay periods and the new employee is informed of such deduction at the time of hire. Such deposit (or appropriate portion thereof) shall be returned to the employee upon termination of employment provided that such uniforms, apparel and equipment are returned in reasonable condition (reasonable wear and tear excepted). If such uniforms, apparel and equipment are not returned in reasonable condition, the Employer will keep the ($150.00) deposit and deduct up to two hundred and twenty-five dollars ($225.00) from the employee's final paycheck (for a maximum total of three hundred and seventy-five dollars ($375.00).

**Section 5.** The Employer shall have the right, at its discretion, to require employment applicants to undergo tests to determine the presence, in their systems, of unlawful narcotics, controlled substances and drugs, alcohol or other intoxicants or hallucinogens, as a condition of employment by the employer and to refuse to employ any person who refuses to undergo such tests and/or whose test results are positive. In the case of a change of Employers, the new Employer shall have the right, at its discretion, to require existing employees within the building to undergo such tests as a condition of employment and to refuse employment to any individual who refuses to undergo such tests and/or whose test results are positive.

The Employer shall also have the right to require any employee to undergo random drug and/or alcohol testing in the field or at a qualified laboratory or to require employees to undergo such testing whenever the Employer, in its sole discretion, believes either that the employee may have ingested unlawful narcotics, controlled substances or drugs or that the employee's job performance has been or is likely to be affected by consumption of alcohol, and to discharge, for cause, any employee who refuses to undergo such tests or whose test results reveal the presence of (i) any quantity of any unlawful substance, or (ii) a quantity of alcohol which could impair the employee's work performance or adversely affect his or her reflexes. Positive field tests for unlawful narcotics, controlled substances and drugs other than alcohol must be verified by follow-up tests conducted by a qualified laboratory before the employee may be disciplined. Positive field tests for alcohol, including breathalyzers, shall be deemed sufficient for employees to be disciplined or discharged. If subjected to urine testing, the employee shall be allowed to void the urine in private without any person observing said act. In the event of positive results of an alcohol test in the field, the evidence of such positive test shall be retained by the Employer for at least 30 days and shall be made available to the Union upon request.

13

contribute $4.13 (four dollars and thirteen cents) for each pay hour of work performed by such employee.

**Section 2.** For the period July 1, 2016 through June 30, 2017 Employers shall contribute $767.87 (seven hundred sixty-seven dollars and eighty-seven cents) each month on behalf of each regular full time employee covered by this Agreement who is on its active payroll to the Local 25 SEIU Welfare Fund; provided, however, that Employers' contributions shall be prorated for those months in which such regular full-time employees begin working, cease their employment and/or remain on medical, personal or union leaves of absence for periods in excess of those specified in Article XVI, Sections 1, 2 and 3 and Section 7 of this Article, respectively. For purposes of the foregoing, a "regular full-time employee" shall be defined as one who is normally scheduled to work 120 (one-hundred-twenty) or more hours within a calendar month. In the case of employees other than regular full-time employees, Employers shall contribute $4.43 (four dollars and forty-three cents) for each pay hour of work performed by such employee.

**Section 3.** For the period July 1, 2017 through June 30, 2018 Employers shall contribute $828.53 (eight hundred twenty-eight dollars and fifty-three cents) each month on behalf of each regular full time employee covered by this Agreement who is on its active payroll to the Local 25 SEIU Welfare Fund; provided, however, that Employers' contributions shall be prorated for those months in which such regular full-time employees begin working, cease their employment or remain on medical, personal or union leaves of absence for periods in excess of those specified in Article XVI, Sections 1, 2 and 3 and Section 7 of this Article, respectively. For purposes of the foregoing, a "regular full time employee" shall be defined as one who is normally scheduled to work 120 (one-hundred-twenty) or more hours within a calendar month. In the case of employees other than regular full-time employees, Employers shall contribute $4.78 (four dollars and seventy-eight cents) for each pay hour of work performed by such employee.

**Section 4.** Effective July 1, 2018 and for the remaining duration of the Agreement, Employers shall contribute to the Local 25 SEIU Welfare Fund on behalf of employees covered by this Agreement such amounts as shall be prescribed in the collective bargaining agreement to be negotiated between the Building Owners and Managers Association (BOMA) and the Union covering regular full-time janitorial employees and janitorial employees other than regular full-time janitorial employees to go into effect April 2018.

**Section 5.** Paid vacations, holidays and funeral leave shall be treated as time worked. In the event an employee works during his or her holiday or vacation, one payment to the Welfare Fund is all that will be required.

**Section 6.** The Employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing the Local 25 SEIU Welfare Fund and all amendments thereto, and also hereby irrevocably designates as its representatives the Trustees named as Employer Trustees in said Agreement, together with their

15

made to such Trust, and who is regularly scheduled to work thirty (30) or more hours per week and who actually works at least 50% of the employee's scheduled workweek. In the event such employee does not work at least 50% of the employee's scheduled workweek, the Employer shall make contributions at the rate of $1.15 (one dollar and fifteen cents) per hour for all hours actually worked. For employees not meeting the aforesaid conditions, contributions shall be made at the rate of $1.15 (one dollar and fifteen cents) per hour worked for employees who actually worked less than 30 hours per week. Paid holidays, paid vacations and funeral absence (up to three working days) are deemed time worked for pension contribution purposes. The Union and the Employer shall endeavor to have the Trustees of the Pension Fund arrange to have the employee's last employer notified when an employee makes application for a pension. In the event an employee works during his or her holiday or vacation, one payment to the Pension Fund is all that will be required.

**Section 3.** For the period April 25, 2016 through June 30, 2018, Employers shall contribute to the SEIU National Industry Pension Fund at the rate of $46.00 per week for each employee for whom contributions have in the past been made to such Fund, and who is regularly scheduled to work thirty (30) or more hours per week and who actually works at least 50% of the employee's scheduled workweek. In the event such employee does not work at least 50% of the employee's scheduled workweek, the Employer shall make contributions at the rate of $1.15 (one dollar and fifteen cents) per hour for all hours actually worked. For employees not meeting the aforesaid conditions, contributions shall be made at the rate of $1.15 (one dollar and fifteen cents) per hour worked for employees who actually worked less than thirty (30) hours per week. Paid holidays, paid vacations and funeral absence (up to three working days) are deemed time worked for pension contribution purposes. See attachment.

The Union and the Employer shall endeavor to have the Trustees of the Pension Fund arrange to have the employee's last employer notified when an employee makes application for a pension. In the event an employee works during his or her holiday or vacation, one payment to the Pension Fund is all that will be required.

**Section 4.** Effective July 1, 2018 and for the remaining duration of the Agreement, Employers shall contribute to the Local 25 SEIU Pension Fund or the National Industry Pension Fund on behalf of employees covered by this Agreement such amounts as shall be prescribed in the collective bargaining agreement to be negotiated between the Building Owners and Managers Association (BOMA) and the Union covering regular full-time janitorial employees and janitorial employees other than regular full-time janitorial employees to go into effect April 2018.

**Section 5.** The Employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing said Local 25 Pension Trust and the National Pension Fund and all amendments thereto, and hereby irrevocably designates as its representatives the Trustees named as Employer Trustees in said Agreement, together with their successors selected in the manner therein provided, and further ratifies and approves all matters heretofore done in connection with the creation and administration of said Trusts and all actions to be taken by such Trustees within the

17

**Section 2.** Delinquencies, Interest and Liquidated Damages. If the Trustees do not receive full amount of the Employer's required Welfare Fund and Pension Trust or contribution and the accompanying remittance form by the dates set forth in Article XII, Section 8 and Article XIII, Section 6 with respect to which contributions are due, the Employer will be required to pay, in addition to the amount of such contribution, interest and liquidated damages at the rates specified in the Trust Agreements on the unpaid amount, as well as accountants' and attorneys' fees and court costs, if any, incurred in effecting collection. The Employer acknowledges receipt of the Trust Agreements and represents to the Union and the Funds that it has read the interest and liquidated damages provisions.

**Section 3.** Collection Policy. Employer acknowledges that the Trustees of the Funds have the Fiduciary obligation under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") to ensure prompt collection of Employer contributions and the resolution of delinquencies through the use of payroll audits and other enforcement procedures. Accordingly, the Employer hereby irrevocably designates as its representatives the Trustees named Employer Trustees of the Funds and their successors in connection with the adoption, amendment and administration of a collection policy setting forth payroll audit and collection procedures in accordance with the terms and conditions of ERISA prohibited transaction class exemption 76-1. Employer hereby consents to and agrees to be bound by the provisions of such collection policy, as amended, as though fully set forth in this Agreement. A copy of the current collection policy as adopted by the Trustees is attached to this Agreement.

## ARTICLE XV
## SENIORITY

**Section 1.** The term "seniority" shall mean the length of service of a regular employee in either of the following situations:

- (a) In a Building: for promotion, layoff, recall, shift assignment, vacation, vacation scheduling, holiday and leave of absence rights, or;
- (b) For a specific Employer: for portable vacation, portable holiday and portable leave of absence rights;
- (c) If an Employee transfers out of this agreement, his/her seniority date will revert back to the original date of hire with the company, and all terms and conditions under this agreement will be forfeited;

provided that new employees shall be considered probationary employees for the first 90 calendar days of employment. During their probationary period, employees shall have no seniority and may be laid off or terminated at the sole discretion of the Employer and such action shall not be subject to the grievance procedure of this Agreement. An employee's seniority rights shall not be affected by a change of ownership, management, or contractor in a building or with an Employer so long as said employee remains in the employ of the new owners, managers, or contractors. The Employer shall post a seniority list in each building in a place accessible to all

19

## ARTICLE XVI
## LEAVES OF ABSENCE

**Section 1.** The Employer shall grant a leave of absence in writing because of illness or disability, substantiated by medical approval, upon the following schedule: under one year seniority, no leave; one year to three years' seniority, six months' leave; three years to five years' seniority, nine months' leave; after five years' seniority, one year leave. Upon return from such leaves and subject to the rights of the Employer under Article II hereof, the employee shall return to the assignment previously being performed by the employee or in the event such assignment no longer exists, a substantially comparable position, consistent with the returning employee's seniority in relation to that of the employees working in the building at the time of return from leave.

**Section 2.** The Employer shall not unreasonably withhold the granting of a personal leave of absence submitted in writing for reasons other than illness or disability of up to fourteen (14) days after two (2) years and up to ninety (90) days after five (5) years of seniority. The Employer shall not be required to grant a personal leave of absence until after twenty-one (21) months have expired since an employee's previous personal leave of absence. Failure to return to work without justifiable cause following a personal leave of absence will be grounds for termination.

**Section 3.** An employee selected to represent the Union at conventions, conferences, collective bargaining, grievance and arbitration proceedings or for other Union business shall be granted a leave of absence for the period required to fully carry out said business, but in no case shall the leave last longer in duration than one (1) year. The Union shall give written request for such leaves at least seven (7) days in advance, including the expected dates and duration of such leaves. Any leave in duration of two (2) months to one (1) year under this section shall necessitate that the employee work six (6) consecutive months back on the job before being granted a new leave. The Union will not request more than two (2) employees from any one Employer to be allowed a Union leave of absence unless it is an emergency.

**Section 4.** During all such leaves of absence provided for in this Article, seniority shall continue to accumulate and accrue. By agreement between the Employer and the Union, employment of an employee on such leave of absence may be terminated.

**Section 5.** The provisions of the Family Medical Leave Act, where more favorable, shall supersede the provisions of this Article.

## ARTICLE XVII
## STRIKES, LOCKOUTS, PICKETING

**Section 1.** During the term of this Agreement, there shall be no strikes, lockouts, picketing, work stoppages, slowdowns, or sympathy strikes, nor shall there be any attempted interference with or disruption of the business of the Employer and/or its

## STEP II

If the matter is not settled in the first step, and the Union wishes to further pursue it, the grievance shall be reduced to writing and presented to the responsible Operations Manager or other management employee designated by the Employer within thirty (30) calendar days following the event which gave rise to its occurrence. The immediate supervisor, together with the aggrieved employee, the steward, if applicable, and the Union Grievance Representative shall take the grievance up with the responsible Operations Manager. The Operations Manager shall give his or her written answer within fifteen (15) calendar days after receipt of the written grievance.

## STEP III

If the grievance originated due to the direct actions of the Building Manager (or his/her designee) at the jobsite, there shall be an informal fact finding meeting held with the Union Grievance Representative, the aggrieved employee(s), and the Building Manager along with the Employers' Operations Manager (or their designees) within fifteen (15) calendar days of said written answer in Step II. If the grievance did not originate due to the direct actions of the Building Manager or his/her designee, this Step III need not be taken and the grievance shall proceed to Step IV. If the building manager or his/her designee does not reply or refuses/fails to attend the meeting, this Step III need not be taken and the grievance shall proceed to Step IV.

## STEP IV

If the grievance is not settled in Step II or Step III and the Union wishes to further pursue it, the Union shall, within thirty (30) calendar days after the response to Step II or Step III, serve a written demand for arbitration upon the Employer. The grievance shall hereafter be submitted to an arbitrator who shall be selected by mutual agreement of the Employer and the Union from the following panel (which may be added to hereafter upon agreement of the parties):

> EDWIN BENN
> LISA SALKOVICH KOHN
> SINCLAIR KOSSOFF
> JOHN FLETCHER
> ROBERT McALLISTER
> ROBERT PERKOVICH
> STEVEN BIERIG
> MARTIN MALIN
> JEANNE VONHOF

The arbitrator shall be notified of his/her selection by a joint letter from the Employer and the Union requesting that he/she set a time and a place for the hearing within fifteen (15) days, subject to availability of the Employer and Union representatives, and the letter shall specify the issue to the arbitrator. The arbitrator shall render a written award within 30 days after hearing, if there is no transcript of the

(3) weeks notice to the Employer of the intent to spend time at the Employer's office to review the following documents: complete copies of Employer's last two (2) payroll periods, most recent quarterly remittance of the Illinois Report of Wages paid to each worker, and UC3-40 forms and continuation sheet (and, or the Indiana equivalent payroll form).

## ARTICLE XXI
## JURY SERVICE

The Employer shall compensate the employee for the difference between the pay, which such employee would normally receive, excluding overtime, and the amount received for jury service up to a period of four (4) weeks. It shall be the employee's responsibility to present evidence to the Employer of his or her notice of jury duty and the length of time he or she served on such jury prior to being compensated.

## ARTICLE XXII
## MISCELLANEOUS PROVISIONS

**Section 1.** If any Employer shall list job vacancies with an employment agency, said Employer shall pay all the cost and charges of such agency.

**Section 2.** If any law now existing or hereafter enacted; or any proclamation, regulation or edict of any national or state official or agency shall invalidate any portion of this Agreement; the entire Agreement shall not thereby be invalidated and either party hereto, upon request, may reopen for negotiation the invalidated portion. In the event agreement thereon cannot be reached within 30 days, either party may submit the matter to arbitration as herein provided.

**Section 3.** Neither the Employer nor the Union will discriminate against applicants or employees with regard to employment, tenure or any other term or condition of employment on the basis of race, sex, color, age, religious creed, national origin or ancestry in violation of any law.

**Section 4.** Nothing contained in this Agreement shall be construed to prevent or restrict supervisors or other managerial personnel from performing bargaining unit work in the event of an emergency, during training periods, or because of significant tenant and/or public relations requirements.

**Section 5.** The Employer shall promptly notify the Union of any change in the security contractor of any building in the jurisdictional area serviced by the Employer and the effective date of such change.

**Section 6.** Employers shall not require employees to reimburse them for property loss or damage without legitimate reason. However if the property loss or damage exceeds $150.00 the Employer shall notify the Union and the employee of the required reimbursement amount.

observing the terms of this Agreement shall be processed in accordance with the grievance and arbitration procedures set forth in Article XVIII. If it is determined in the proceedings that the grievance is well founded and the subcontractor thereafter refuses to implement the remedy imposed, the contract between the subcontractor and the Employer shall be terminated within sixty (60) calendar days after written notice by the Union to the Employer.

## ARTICLE XXV
## MAINTENANCE OF CONDITIONS – REGISTRATION OF LOCATIONS

### Section 1.

1) The Union and Employer recognize that Clients have the sole power to determine increases or decreases in staffing. The Employer shall endeavor to give a minimum of ten (10) working days' notice to an employee who is to be laid-off, or pay an amount equivalent to the employee's wages for ten (10) working days in lieu of notice. Such payment shall not be construed as payment of accrued vacation.

2) No regular, full time employee shall be laid-off while there is a temporary or part-time employee working at the job location.

3) Employees on lay-off from the job shall have preference in rehiring. All laid-off employees of the Employer shall have preference on the basis of seniority

### Section 2.

1) The Employer shall furnish the Union with a written list of jobs including the exact address and location of each job covered by this agreement. Lists shall be delivered to the Union within ten (10) days after the execution of this Agreement.

2) All conditions or changes in (1) above shall be submitted to the Union within ten (10) working days after they become effective.

3) The Employer agrees to provide the following information for all job locations:
    (a) The number of employees and the name and job description of each employee;
    (b) The number of man hours worked per day and per week;
    (c) The starting and quitting time of each employee;
    (d) The wage rate of each employee;
    (e) The original date of employment of each employee at the particular job location, if it can be determined through documentation.

4) Upon receipt of such information, the Union will treat the information on a confidential basis, and will not release it to any other Employer(s).

27

## ARTICLE XXVII
## BENEFITS FOR EMPLOYEES ON TEMPORARY ASSIGNMENT

Notwithstanding any other provision in this agreement to the contrary, covered employees not assigned to a regular, permanent post or who are assigned to a temporary post ("temporarily assigned employee"), shall receive the following benefits:

(a) **Vacations**: No vacation accrual is to be credited to the temporarily assigned employee; provided, however that any temporarily assigned employee who has been employed either by the Employer or by the security contractor performing bargaining unit work for the Employer for more than twelve (12) consecutive months shall be eligible to receive vacation benefits. Vacation accrual for such temporarily assigned employee begins only at such time as the regular employee is dropped from the payroll or after twelve (12) consecutive months of employment by the Employer or by the security contractor performing bargaining unit work for the Employer, whichever occurs first.

(b) **Holidays, Funeral Leave & One-Day Wellness Visits:** Temporarily assigned employees shall receive such benefits as described in this Agreement.

(c) **Health & Welfare and Pension Contributions:** Temporarily assigned employees shall not have Health & Welfare and Pension contributions made on their behalf, provided, however, that any temporarily assigned employee who has been employed by the Employer for more than twelve (12) consecutive months, at the same job site, shall have contributions made on his/her behalf, or when the employee receives a permanent assignment, whichever comes first.

29

## **EMPLOYER CONTRIBUTION COLLECTION POLICY**

1. <u>Delinquencies.</u> Employer contributions shall be due in the Fund's Bank Depository (lock box) on or before the due date specified in the Collective Bargaining Agreement. An Employer is delinquent with respect to a contribution if the correct amount of the Employer contribution and the appropriate remittance reports are not received by the Bank Depository established for the Fund by such date. If the Employer pays by the due date, but the amount is less than what is required, the delinquency is the difference between the amount due and the amount paid.

An Employer's delinquency may result in the loss of Welfare Fund eligibility for the respective employees.

2. <u>Notice of Delinquency.</u> After the first calendar day of each month, the Fund Office shall identify each Employer who remains delinquent as of such day. The Fund Office shall notify each delinquent Employer of its delinquency and of the accrual of interest charges and the assessment of liquidated damages. If the building serviced by the delinquent Employer belongs to any Building Manager's Association, the Fund Office may also inform the Association. The Fund Office may notify the applicable Management Association and Union of all delinquencies in summary form. A summary notice may also be sent to the Local Union Representative and to the Board of Trustees. The failure of the Fund to send notice or the Employer's failure to receive notice as provided in this paragraph shall not relieve the Employer of its liability for contributions and related interest and liquidated damages.

3. <u>Interest and Liquidated Damages.</u> Interest and liquidated damages will be imposed on all delinquent contributions identified by the Fund Office in the manner described in paragraph 2 at the rates specified in the Trust Agreement, except as provided below. Interest and liquidated damages will be determined from the date the contribution was due to the date payment is recorded as received by the designated bank depository.

If the delinquency arises because the Employer failed to make a payment, interest and liquidated damages will be imposed on the total amount due. If the Employer makes a payment by the due date, but pays less than the required amount, interest and liquidated damages will be imposed on the unpaid balance of the required contribution.

Interest and liquidated damages will accrue from the due date in the Collective Bargaining Agreement until the delinquencies have been corrected. The accrual of interest and liquidated damages will be calculated on a daily basis. Provisions in Collective Bargaining Agreements, that credit Employer contributions to the earliest period when the delinquent contributions are owed irrespective of the allocation shown on the Employers' remittance report apply only to the issue of the plan coverage for the affected employees and do not affect the calculation of interest and liquidated damages as set forth in this collection policy.

Interest and the assessment of liquidated damages may be waived by the Trustees if a waiver is consistent with the Trustees' fiduciary duties under ERISA and does not result in a prohibited transaction under ERISA Section 406, provided that (a) the Employer has not been delinquent during the previous 12 months (but interest and liquidated damages may be reimposed if the Employer again becomes delinquent during the subsequent 12 months); (b) the delinquency was isolated or inadvertent; (c) the delinquency remained uncorrected for less than 30 days and resulted from a failure of data processing equipment that was beyond the control of

     c.    The Employers to be audited will be determined from a computer-generated list of contributions made by each Employer for the fiscal year October 1st through September 30th. The Employers will be randomly selected, except that no audit shall be performed in those cases in which the Trustees determine that an audit would not be cost effective, and Employers who have been audited as a result of random selection process shall not be randomly audited more frequently then once every two years.

     d.    Any Employer audit that results in a deficiency in excess of $5,000.00 or 3% of its reported contributions may be subject to audit on an annual basis.

The payroll audit procedures will be those procedures established by the Funds' independent certified public accountants.

Nothing in the aforementioned selection process will prevent payroll audits, for cause, at any time on any contributing Employer. The following criteria shall be considered cause for performing payroll audits:

1)    The Employer's name appears as delinquent on multiple occasions; or

2)    The Employer is suspected of not reporting accurately.

The Fund will pay the cost of payroll audits unless any such audit discloses an amount due from an Employer in excess of 2% of the reported contributions for the period audited in which event the Employer shall be responsible for and shall be assessed with the cost of the audit.

When a payroll audit discloses that an Employer has not made all required contributions, the auditor shall advise the Employer of the amount found to be due and the basis for the amounts owed, including interest and liquidated damages. Interest and liquidated damages will be calculated from the date the deficiency arose to the date of the audit report for purposes of notifying the Employer of the delinquency and will continue to accrue until all amounts are paid. If the amounts due are not paid within 14 days of the Employer's receipt of such a notice, the Trustees shall refer the matter to Fund Counsel for collection. In the event of a referral to counsel, the Employer shall be responsible for attorney's fees and any further costs incurred in collecting the delinquent amounts, interest and liquidated damages.

     8.    <u>Dates.</u>    In the event of any inconsistency between due dates in this Policy and an applicable Collective Bargaining Agreement, the Collective Bargaining Agreement will control.

## SCHEDULE B
### Examples of Wage Progression

**Example 1 (Currently outside of progression):** A Security Officer's date of hire was April 30, 2009, and his current wage rate is $14.95 per hour (which is higher than the contractual minimum). On April 25, 2016, the officer's pay increases by $0.40 per hour (to $15.35 per hour). On April 24, 2017, the officer's pay would increase by $0.40 per hour (to $15.75 per hour). On April 23, 2018, the officer's pay would increase by $0.45 per hour (to $16.20 per hour).

**Example 2 (Officer hired before April 30, 2013):** A Security Officer's date of hire was February 15, 2013 and he is currently paid $12.75 per hour. On April 25, 2016, the officer's pay increases to $14.15 per hour (the minimum for employees hired before April 30, 2013). On April 24, 2017, the officer's pay increases by $0.40 per hour (to $14.55 per hour). On April 23, 2018, the officer's pay increases by $0.45 per hour (to $15.00 per hour).

**Example 3 (In 3rd year of progression and currently paid above scale):** A Security Officer's date of hire was December 4, 2013 and she currently is paid $11.75 per hour. On April 25, 2016, the officer's pay increases by $0.40 per hour (to $12.15 per hour). On April 24, 2017 (having completed three years of service), the officer's pay increases to $12.60 per hour. On December 4, 2017 the officer's pay increases to $12.80 per hour. On April 23, 2018 (having completed four years of service), the officer's pay increases to $13.80 per hour.

**Example 4 (In 2nd year of progression and currently paid above scale):** A Security Officer's date of hire was August 14, 2014 and she currently is paid $11.50 per hour. On April 25, 2016 (having completed one year of service), the officer's pay increases by $0.40 per hour (to $11.90 per hour). On April 24, 2017 (having completed two years of service), the officer's pay increases to $12.40 per hour. On August 14, 2017, the officer's pay increases to $12.60 per hour. On April 23, 2018 (having completed three years of service), the officer's pay increases to $13.60 per hour.

**Example 5 (In 1st year of progression currently paid at scale):** A Security Officer's date of hire was April 2, 2015 and she is currently paid $11.05 per hour. On April 25, 2016 (having completed one year of service), the officer's pay increases by $0.40 per hour (to $11.45 per hour). On April 24, 2017 (having completed two years of service), the officer's pay increases to $12.40 per hour. On April 2, 2018, the officer's pay increases to $12.60 per hour. On April 23, 2018, the officer's pay increases to $13.60 per hour.

**Example 6 (In 1st year of progression currently paid at scale):** A Security Officer's date of hire was November 12, 2015 and he is currently paid $10.50 per hour. On April 25, 2016, the officer's pay increases to $11.00 per hour (the new starting rate). On November 12, 2016 (anniversary date), the officer's pay increases to $11.20 per hour. On April 24, 2017 (having completed one year of service), the

35

Attachment Per Article XIII Section 3

Based on the terms of the SEIU National Industry Pension Fund (NIPF) rehabilitation plan issued by the trustees on November 25, 2009, the Employer is required to make a supplemental contribution to the NIPF over and above the regular contribution described in Section 1 of this Article. The Employer shall pick from the NIPF Preferred or Default plan to determine the supplemental contribution amount. If the Employer does not elect which plan they desire, the NIPF will automatically enroll the Employer into the Default Plan. See below Preferred Plan contribution schedule.

Table of Scheduled Contribution Increases

The year at the top of each column represents the year in which the bargaining parties first adopt the schedule. The supplemental contributions due on all regular contributions, effective on the effective date of the contract adopting the schedule (or 180 days after expiration of the prior contract, if earlier), and on each anniversary thereafter.

Note: The Trustees are required by ERJSA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Rehabilitation Plan and schedules. Benefit reductions and contribution rates specified in the schedules as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule. Accordingly, while the contribution rate increases listed here for years 2011 and later represent the amounts expected to be required if all of the underlying assumptions are borne out, they may be changed if the Trustees decide that is advisable in light of the Fund's actual future experience.

Preferred Schedule Supplemental Contributions by Year of Adoption:

|  | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|
| 2009 | 5.0% | 5.0% | 5.0% | 5.00% | 5.00% | 5.00% |
| 2010 | 10.0% | 10.0% | 10.0% | 10.00% | 10.00% | 10.00% |
| 2011 | 18.5% | 18.5% | 10.0% | 10.00% | 10.00% | 10.00% |
| 2012 | 27.7% | 27.7% | 27.7% | 10.00% | 10.00% | 10.00% |
| 2013 | 37.6% | 37.6% | 37.6% | 37.6% | 10.00% | 10.00% |
| 2014 | 48.3% | 48.3% | 48.3% | 48.3% | 48.3% | 10.00% |
| 2015 | 59.8% | 59.8% | 59.8% | 59.8% | 59.8% | 59.8% |
| 2016 | 72.1% | 72.1% | 72.1% | 72.1% | 72.1% | 72.1% |
| 2017 | 85.5% | 85.5% | 85.5% | 85.5% | 85.5% | 85.5% |
| 2018 | 99.9% | 99.9% | 99.9% | 99.9% | 99.9% | 99.9% |
| 2019 | 115.4% | 115.4% | 115.4% | 115.4% | 115.4% | 115.4% |
| 2020 | 132.0% | 132.0% | 132.0% | 132.0% | 132.0% | 132.0% |
| 2021 | 150.0% | 150.0% | 150.0% | 150.0% | 150.0% | 150.0% |
| 2022 | 169.4% | 169.4% | 169.4% | 169.4% | 169.4% | 169.4% |
| 2023 | 169.4% | 169.4% | 169.4% | 169.4% | 169.4% | 169.4% |

37